## (C.D. 2501)

AUTHENTIC FURNITURE PRODUCTS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 7, 1965)

*Stein & Shostak* (*Marjorie M. Shostak* and *S. Richard Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Richard J. Kaplan*, trial attorney), for the defendant.

Before DONLON and RICHARDSON, Judges

DONLON, Judge: The merchandise here in issue consists of wooden stands, or tables, which as imported from Japan were unassembled. Entered at Los Angeles on May 17, 1960, they were assessed with duty at 30 percent ad valorem under paragraph 1552 of the Tariff Act of 1930, as modified, as smokers' articles and parts thereof, finished or unfinished, not specially provided for. Plaintiff claims that the stands are dutiable at 10½ percent ad valorem, under modified paragraph 412, as furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, not specially provided for.

The competing provisions are as follows:

PAR. 1552 [as modified by the General Agreement on Tariffs and Trade, T.D. 51802]. All smokers' articles whatsoever * * * and parts thereof, finished or unfinished, not specially provided for, of whatever material composed, except china, porcelain, parian, bisque, earthenware, or stoneware:

   *         *         *         *         *         *         *

   Other_____ 30% ad val.

PAR. 412 [as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108]. Furniture, wholly or partly finished, and parts thereof, wholly or in chief value of wood, and not specially provided for:

   *         *         *         *         *         *         *

   Other furniture_____ 10½% ad val.

On trial at Los Angeles on September 10, 1963, plaintiff adduced the testimony of one witness, Mr. Sheldon Samuels, and introduced three exhibits into evidence. Defendant introduced no evidence and submitted on the record presented by plaintiff.

Collective exhibit 1 is representative of the merchandise in its imported condition; it consists of seven pieces of wood. Exhibit 2 illustrates the seven pieces of wood that were imported, after assembly subsequent to importation. Exhibit 3 consists of certain catalog pages that illustrate the article as offered for sale in the United States.

As assembled, the article is a wooden stand, or small table, 24 inches high, with four legs that fit into a shelf which is about 10 inches from the floor and which (the shelf) is 7 inches square. Extending upward from the center of the shelf is a wooden post, about a foot high, on top of which there is a circular wooden piece 8 inches in diameter. This circular piece, which is the top of the stand, is not flat. It has a shallow well, in the upper surface, the well being about 5¼ inches in diameter.

Mr. Sheldon Samuels, testifying for plaintiff, said that he is operations manager of Authentic Furniture Products, the plaintiff in this suit. He testified that he has been in the furniture business for about 9 years; that his duties presently include importing merchandise, supervising assembly plants, developing merchandising and selling programs, and working with 45 or 50 sales representatives who cover the United States, Canada, and Hawaii.

Describing the process of assembly of the stand which is before the court here, Mr. Samuels said that it is imported in a knocked-down condition and assembled at the firm's plants, to put it in condition for use. His firm sells the assembled article to furniture stores, notion stores, and to five-and-ten-cent stores; chiefly, however, to furniture stores and furniture chains. In stores that have several departments, this line is sold in the furniture department or in the accessories department.

This article is one item in a line of five or six items of furniture, all of which appear to have the same basic bottom section. The difference is in the tops. These articles, Mr. Samuels said, are illustrated on the pages marked "A" and "B" of the catalog, plaintiff's exhibit 3.

Mr. Samuels also said that he had seen tables, such as plaintiff's exhibit 2, in use; but he had not seen them in use either frequently or extensively, because he does not go into department stores very often. He has not seen them used in homes. He is familiar with the purpose for which they are designed. He said they are intended for, and are susceptible of, use as receptacles for a vase, a candy dish, ashtrays, knickknacks, or a knitting bowl.

On cross-examination, Mr. Samuels indicated, by marking "X," a catalog item (exhibit 3) labeled "#250 Ash Tray Stand with Glass

Tray." He stated that this is identical with plaintiff's exhibit 2, except that an ashtray has been placed in the concave surface, or well, on the tabletop. He also marked with "X" an item in the same catalog (exhibit 3), described there as "#251 Magazine Ash Tray Stand with Glass Tray," and testified that this differed from plaintiff's exhibit 2 only in that it had two magazine wings attached to the bottom surface, or shelf, and a glass ashtray on the top.

According to Mr. Samuels, the glass ashtray of number 250 is not necessarily placed there in the factory. However, the stand is sold by plaintiff with the ashtray in a box. This box, which was brought into court, was identified by the stock number 2250, which the witness said was the same as 250 except that a digit had been added to show the color is different.

He conceded that the article is sold as a number 250 ashtray stand, and that it is advertised as an ashtray stand for use in conjunction with an ashtray fitted into the top of the stand. The ashtray is a domestic article, Mr. Samuels said; it is not included with the article as imported.

The ashtray is not permanently affixed to the stand. It can readily be removed. During shipment, it is held to the stand with a piece of tape, in order to prevent breakage. The surface of the base section, or shelf, can be used to hold articles.

The issue here is whether the imported stands are dutiable as smokers' articles, as assessed, or as furniture. Plaintiff argues that there is nothing about the article, in its imported condition, which dedicates it to use with an ashtray and that it is, in fact, susceptible of use for various purposes other than with an ashtray.

It is presumed that the collector found all the facts necessary to bring the merchandise within the classification of smokers' articles. Plaintiff, therefore, has the burden of proving both that the collector's classification was erroneous and that the claimed classification is correct. *V. E. Scott & Co.* v. *United States*, 14 Cust. Ct. 1, C.D. 902; *Karavan Trading Corp.* v. *United States*, 22 Cust. Ct. 44, C.D. 1156, and cases there cited.

It is settled law that the statutory words "all smokers' articles whatsoever" are comprehensive, manifesting an intention to gather within that enumeration everything that is chiefly used by smokers, whether or not the article may also be included in some other tariff enumeration. *Knauth* v. *United States*, 1 Ct. Cust. Appls. 334, T.D. 31432; *Vandiver* v. *United States*, 1 Ct. Cust. Appls. 194, T.D. 31219; *United States* v. *Dunhill*, 13 Ct. Cust. Appls. 310, T.D. 41231; *Sears, Roebuck and Co.* v. *United States*, 39 Cust. Ct. 5, C.D. 1893. In *United States* v. *Dunhill, supra,* the court said:

It matters not what the material may be of which it is composed, or that the article may have an incidental use other than as a smoker's article, yet, if the

chief use of the article is that of a smoker's article, we have always held that such use will control the classification of the article.   [P. 313.]

An article may be a piece of furniture.   However, if it is chiefly used for the convenience of smokers, it is properly classified as smokers' articles.   *Steinhardt* v. *United States*, 126 Fed. Rep. 443, T.D. 25138.   It is not required that, as imported, the article shall be ready in all respects for use in the act of smoking; it may be material for further manufacture into a completed smokers' article.   *Sears, Roebuck and Co.* v. *United States, supra; Bush & Co.* v. *United States*, 10 Ct. Cust. Appls. 161, T.D. 38402; *Monroe Foreign Forwarding Co.* v. *United States*, 55 Treas. Dec. 674, T.D. 43354.

Here, although plaintiff's witness testified that the imported article was designed for use as a receptacle to hold a vase, candy dish, ashtray, knickknacks, or a knitting bowl, he never saw the stand in use in homes.   Nor was any other evidence offered to establish actual use of the article by consumers.   The only use shown is by the importer, who sells the stand together with a glass ashtray and who calls it an ashtray stand.   There is no evidence that the imported article was ever advertised or sold for any other purpose than as an ashtray stand. Although the ashtray itself is added in the United States, in order to complete the article for the intended use for which it is sold, it is noted that the tariff provision in issue enumerates both finished and unfinished smokers' articles.   Also, the fact that the ashtray, sold with the stand, is not permanently affixed does not, of course, establish that the stand is not a smokers' article.   As is too well known to require proofs, ashtrays often are removable, as an aid to cleaning them.

From the testimony and the illustrations of plaintiff's exhibt 3, it appears that this stand is one of a series of tables or stands, each with a similar base but with different tops, and each designed for a particular purpose.   This stand, here in issue, was called by the seller an ashtray stand.   It was offered as such.   It was sold for that use, for which it was suitable.   As our appeals court held in *United States* v. *Quon Quon Company*, 46 CCPA 70, C.A.D. 699:

* * * Of all things most likely to help in the determination of the identity of a manufactured article, beyond the appearance factors * * * use is of paramount importance.   To hold otherwise would logically require the trial court to rule out evidence of what things actually are every time the collector thinks an article, as he sees it, is specifically named in the tariff act.   [P. 73.]

While the stand might be used, also, to hold some other type of tray or a bowl or vase, there is no evidence that it was ever sold or offered for sale or used in such other way.   Even proofs of occasional or fugitive use would not overcome the weight of the proofs here as to dedication to use.   This proof is by the testimony of the importer who dealt with the article whose "testimony as to chief use has great probative value."   *United States* v. *The Baltimore & Ohio R.R. Co.*, 47 CCPA 1, C.A.D. 719, at pages 5, 6.

Plaintiff cites *Cincinnati Artistic Wrought Iron Works (Inc.)* v. *United States*, 58 Treas. Dec. 510, T.D. 44354; and *A. L. Tuska Son & Co., Inc.* v. *United States*, 6 Cust. Ct. 279, C.D. 482. The first cited case concerned iron tables, 29 or 30 inches high, and smoking sets of three pieces. There was evidence that the tables were purchased and sold separately, and that they could be used either with the smokers' three-piece articles or separately. On that record, it was held the iron tables were not shown to be parts of the smokers' set.

The *Tuska* case, *supra*, involved small stands, or tables, 21½ inches high, with four legs, a shelf about 10 inches from the floor, and a square top that had a design in green, red, or pink, outlined with gold-colored paint. These stands were sold to furniture stores, gift shops, and florists for holding flower pots, lamps, and statuary. They were held to be stands, since nothing connected with them indicated that they were designed for use as smokers' articles.

On the record before us, we hold that the merchandise was properly classified by the collector as smokers' articles under paragraph 1552 of the Tariff Act of 1930, as modified. The protest is overruled and judgment will be entered for the defendant.